IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICKY POPE,                        §
                                   §
            Plaintiff,             §
                                   §
VS.                                §   CIVIL ACTION H-12-2660
                                   §
E.I. DU PONT DE NEMOURUS & CO.,    §
INC.,                              §
                                   §
            Defendant.             §

### OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Pending before the Court in the above referenced cause, alleging negligence that resulted in injury to Plaintiff Ricky Pope ("Pope") on February 2, 2011 from a malfunctioning air compressor, bolted into the bed of a pickup truck, while he was working at Defendant E.I. Du Pont de Nemourus & Co.'s ("DuPont's") LaPorte, Texas plant, is DuPont's motion for summary judgment (instrument #24) on the grounds that DuPont owed no duty to Pope.

After carefully reviewing the record and the applicable law, the Court concludes that DuPont's motion should be granted.

### Allegations of Pope's First Amended Complaint (#20)

Alleging that an air compressor malfunctioned and injured him while he was working for his employer, H&E Equipment ("H&E"), at DuPont's LaPorte, Texas plant, Pope claims that "DuPont was negligent in approving, allowing and ratifying the unsafe way that its air compressor was designed, mounted, and installed in DuPont's vehicle," as well as "in continuing to operate its unsafe air

-1-

compressor system after it was installed, . . .[and] in failing to inspect and correct its unsafe air compressor system." #20 at p.3, ¶ 5.3.   He further asserts that DuPont was negligent in its maintenance and repair of the air compressor. *Id.* at ¶ 5.4.  Last, Pope pleads that DuPont "created and caused to be created an unreasonably dangerous condition on its premises" with this air compressor and that DuPont knew or reasonably should have known of that dangerous condition before Pope was injured.  He charges DuPont with breach of its duty of ordinary care, including its duty to inspect, to warn or to cure.

## Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on

which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v.*

*City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."),

*citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).   The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S, at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

## Relevant Law

A threshold requirement for negligence liability, whether for general negligence or premises defect liability, is the existence of a legal duty. *Jenkins v. Occidental Chemical Corp.*, 415 S.W. 3d 14, 37 (Tex. App.--Houston [1[st] Dist.] 2013), *citing Kroger Co. v. Elwood*, 197 S.W. 3d 793, 794 (Tex. 2006).   Common law negligence has three elements:   (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. *El Chico Corp. v. Poole*, 732 S.W. 2d 306, 311 (Tex. 1987).   The plaintiff must prove both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort. *Id.*   Whether a duty exists is a

question of law for the court to determine from the facts surrounding the event in dispute. *Otis Eng'g Corp. v. Clark*, 668 S.W. 2d 307, 312 (Tex. 1983). To make that determination, the court considers various factors, including the risk, foreseeability, and likelihood of injury compared to the utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the result of putting the burden on the defendant. *Id.*

Premises liability is a particular type of negligence in which the duty owed to the plaintiff is based on the plaintiff's status at the time of the injury. *W. Investments, Inc. v. Urena*, 162 S.W. 3d 547, 550 (Tex. 2005). The law imposes on a premises owner a duty to use reasonable care to keep the premises under his control in a safe condition for a business invitee, such as an independent contractor. *Elmgren v. Ineos USA, LLC*, ___ S.W. 3d ___, 2012 WL 1677545, at *9 (Tex. App.--Houston [14th Dist.] Mar. 20, 2014), *citing Redinger v. Living, Inc.*, 689 S.W. 2d 415, 417 (Tex. 1985). There are two types of premises liability claims: (1) defects that exist when the independent contractor enters the premises and (2) defects which the independent contractor's work activity creates. *Id., citing Dow Chem. Co. v. Bright*, 89 S.W. 3d 602, 606 (Tex. 2002). If the defect preexists the independent contractor's entry onto the premises, the owner has a duty to inspect the premises and warn of the defects of which he knows or should have known. *Id.,*

*citing Clayton W. Williams, Jr. v. Olivo*, 952 S.W. 2d 523, 527 (Tex. 1997). If the defects arise after his entry, the owner generally has no duty to the independent contractor or its employees unless it retains a right to exercise or exercises some control over the manner of the independent contractor's work. *Id., citing Bright*, 89 S.W. 3d at 606; *Redinger*, 689 S.W. 2d at 418.

Control can be demonstrated by two means: (1) evidence of an contractual agreement that expressly assigns a party a right to control; or, in the absence of an agreement, by demonstrating that the party actually exercised control over the manner in which the work was performed. *Bright*, 89 S.W. 3d at 606, *citing Koch Ref. Co. v. Chapa*, 11 S.W. 3d 153, 155 (Tex. 1999). "'If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability.'" *Id.*, citing *Elliott-Williams Co. v. Diaz*, 9 S.W. 3d 801, 804 (Tex. 1999). "'It is the [contractual] right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner.'" *Id., citing id.* "'For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods or details of the independent contractor's work. Further, the control must relate to the injury that the negligence causes, and the contract must grant the contractor at least the power to direct the order in which the

work is to be done.'"  *Id., quoting id.*  The Texas Supreme Court
has cited *Restatement (Second) of Torts* § 414 cmt.c regarding the
degree of work an employer must control to be liable:

> It is not enough that [the employer] has merely a general
> right to order the work stopped or resumed, to inspect
> its progress or to receive reports, to make suggestions
> or recommendations which need not necessarily be
> followed, or to prescribe alterations and deviations.
> Such a general right is usually reserved to employers,
> but it does not mean that the contractor is controlled as
> to his methods or work, or as to operative detail.  There
> must be such a retention of a right of supervision that
> the contractor is not entirely free to do the work in his
> own way.

*Hoechst-Celanese Corp. v. Mendez*, 967 S.W. 3d 354, (Tex. 1998).
"'[M]erely exercising or retaining a general right to recommend a
safe manner for the independent contractor's employees to perform
their work is not enough to subject a premises owner to
liability.'"  *Id., quoting Restatement (Second) of Torts* § 414 cmt.
c (1965).

Whether a contract gives a right of control is usually a
question of law for the court.  *Bright*, 89 S.W. 3d at 606, *citing
Lee Lewis Constr., Inc. v. Harrison*, 70 S.W. 3d 778, 783 (Tex.
2001).

Moreover the control must related to the injury which the
negligence causes.  *Id., citing Elliott-Williams Co. v. Diaz*, 9
S.W. 3d 801, 804 (Tex. 1999).  To establish cause in fact, the
plaintiff must show that "the act or omission was a substantial
factor in causing the injury without which the harm would not have

-8-

occurred." *Western Investments, Inc. v. Urena*, 162 S.W. 3d 547, 551 (Tex. 2005), *citing Marathon Corp. v. Pitzner*, 106 S.W. 3d 724, 727 (Tex. 2003).

If the premises owner exercises control by mandating that "a subcontractor comply with its safety regulations, the owner of the premises owes the subcontractor's employees a narrow duty of care that its safety requirement and procedures do not unreasonably increase the probability and severity of injury." *Id., citing Hoechst-Celanese Corp. v. Mendez*, 967 S.W. 2d 354, 358 (Tex. 1998)(the scope of the employer's duty of care is limited to the scope of its retained supervisory control). But usually "merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability." *Koch Ref.*, 115 S.W. 3d at 155.

The Texas Supreme Court clearly distinguishes between premises liability, which is based on the property, itself, being unsafe, and negligent activity, which requires the plaintiff's injury to result from a contemporaneous activity rather than from a condition created on the premises by the activity, with respect to landowners. *Elmgren*, 2014 WL 1677545 at *10, *citing State v. Shumake*, 199 S.W. 3d 279, 284 (Tex. 2006); *Timberwalk Apartments, Partners, Inc, v. Cain*, 972 S.W. 2d 749, 753 (Tex. 1998); *Keetch v. Kroger Co.*, 845 S.W. 2d 262, 264 (Tex. 1992). "Negligent activity

-9-

is a general negligence cause of action and encompasses theories of malfeasance based on affirmative, contemporaneous conduct by the property owner that caused the injury, while premises liability encompasses theories of nonfeasance based on the owner's failure to take measures to make the property safe."  *Id., citing Del Lago Partners, Inc. v. Smith*, 307 S.W. 3d 762, 776 (Tex. 2010).

## DuPont's Motion for Summary Judgment (#24)

DuPont manufactures various products that are subsequently used to manufacture numerous consumer goods, and its employees are involved in its manufacturing operations.  For tasks associated with reworking parts of the plant or other specialized work outside of the scope of its day-to-day manufacturing operations, DuPont contracts with companies with special expertise for the specific work required.  It hired H&E as one such independent contractor for "mobile equipment maintenance and repair services."  Ex. 1, Affidavit of Benjamin Davis, attachments Exs. 1A and C, Service Contract between DuPont and H&E.  Under the contract between them, H&E was an independent contractor[1] with the sole responsibility to

---

[1] The contract (Ex. 1A, Service Contract, Ex. C to Service Contract ¶ 7 ("INDEPENDENT CONTRACTOR")) provides,

> The employees, subcontractors, methods, facilities and equipment used by H&E EQUIPMENT SERVICES at all times shall be under its exclusive direction and control. H&E EQUIPMENT SERVICES [*sic*] relationship to DuPont under the Agreement shall be that of an independent contractor.  Nothing in the Agreement shall be construed to constitute H&E EQUIPMENT SERVICES, its subcontractors or any of their employees as an

control the method and manner of accomplishing the specialized work it was hired to perform and was required to recognize hazards and determine "[t]he methods employed and the precautions taken to handle DuPont-owned equipment, material, and product." *Id.* at ¶ 24.[2]   H&E worked out of a "vehicle maintenance shop" that was restricted to its use at the LaPorte plant, and no DuPont employees worked there.  Pope Dep., Ex. 2, p. 41, ll. 7-14; p. 25, ll. 14-18; Dep. of Jeffrey Harrington, Ex. 3, p. 22, l.12-p. 23, l. 14.

Pope worked for H&E as a mechanic at the DuPont LaPorte plant for two and a half years and performed maintenance on vehicles, generators, fire pumps, golf carts, and all small equipment.  Ex. 2, p. 16, ll. 22-23;p. 19, ll. 3-13.  His supervisor at the time of

---

employee, agent, associate, joint venturer, or partner of DuPont.

[2] Paragraph 24 provides in part,

H&E EQUIPMENT SERVICES acknowledges that hazards may be involved in performing the Services and Work. Accordingly, H&E EQUIPMENT SERVICES shall perform its Services and Work in a careful and workmanlike manner and take all necessary precautions in processing, handling, transporting, and disposing of material and product involved in the performance of Services and Work, to avoid an unhealthy or unsafe work environment, injuries to persons, damage to property of environment. . . . The methods employed and the precautions taken to handle DuPont-owned equipment, material and product, if any, shall be determined by and rest solely with H&E EQUIPMENT SERVICES.

Paragraph 21, Subsection I requires H&E to "properly maintain, inspect, and supervise its designated Work area and roadways to prevent unsafe Work conditions from existing."

the incident in dispute was lead mechanic Jeffrey Harrington ("Harrington"), who had worked at the LaPorte plant for seventeen years. Ex. 3, p. 6, l. 25-p. 8, l. 15. Pope took all his instructions on how to perform his work from Harrington and never from DuPont personnel. Ex. 2, p. 24, l.22-p. 15, l.13; p. 52, l. 25-p.54, l.4; p. 95, l. 22-p. 96, l.3. Pope and Harrington testified that DuPont had no supervisory control over Pope's work. Ex. 2, p. 25, ll. 7-13; p. 52, l. 25-p. 54, l.4; p. 95, l. 22-p. 96, l.3. Ex. 3, p. 23, ll. 15-17. There is also no evidence that DuPont participated in the installation or maintenance of the air compressor that allegedly injured Pope.

The only evidence of activity by DuPont involving H&E safety issues was DuPont's performance of safety audits. Ex. 2, p.87, ll. 5-20. DuPont contends that it is black letter law that the presence of a safety employee on the work site does not create a duty to an independent contractor's employees to intervene to make sure that they safely perform their work. *Koch Ref.*, 11 S.W. 3d at 156, *citing Hoechst-Celanese Corp. v. Mendez*, 967 S.W. 2d 354, 357-58 (Tex. 1998). It is not evidence that the premises owner controlled the method of work or its operative details. *Bright*, 89 S.W. 3d at 608 ("[M]erely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability.").

-12-

Several years before Pope began working for H&E, Harrington asked DuPont to provide H&E with an air compressor.  It was delivered to the H&E vehicle maintenance shop in shrink wrap, unopened.  Ex. 3, p. 91, l.23-p. 23, l.11; Ex. 2, p. 38, l. 10-p. 39, l. 22.  Subsequently H&E employee Shawn Jones, without any supervision or inspection by any DuPont employee, installed the air compressor near the front driver's side, bolting it to the bed of a pickup truck that was dedicated for use by H&E employees only, and which was not used by DuPont employees.  Ex. 3, p. 14, l.21-p. 16, l. 2.  H&E employees performed maintenance and upkeep for the truck at all times. To use the air compressor, H&E employees would stand on the ground and reach over the side of the bed to pull the cord to start the air compressor.  H&E employees used the compressor to fill tires on vehicles around the plant.  Harrington testified that he used the air compressor daily without any problems.  Ex. 3, p. 18, ll. 2-18.

Pope safely used the pickup truck and the air compressor daily for his work for H&E by standing on the ground next to the truck and pulling the cord.  Ex. 2, p. 33, l.24-p.34, l.2; p. 40, ll. 15-16; p. 53, l. 19-p. 54, l. 4.  He testified that Harrington had instructed him that the "safe way to start the air compressor was to stand on the ground and pull [the cord] while standing a little bit farther towards the cab."  Ex. 2, p. 35, l. 19-p. 36, l. 4.  Pope had extensive experience starting small engine equipment with

a pull cord.  Ex. 2, p. 28, l. 20-p. 29, l. 20.

DuPont argues that since the facts in this case are undisputed and because H&E alone had the control over its employees in their work and use of equipment, DuPont did not owe a duty to Pope and is entitled to judgment as a matter of law.  Moreover DuPont argues that because the air compressor was installed by H&E employees without input or direction from DuPont, the accident occurred as a result of H&E's and/or Pope's activity; therefore DuPont is entitled to summary judgment as to a potential, but erroneous, claim that Pope was injured as a result of a premises defect not associated with Pope's work activity.

Plaintiff testified that the air compressor was not defective and was in good working order.  Ex. 2, p. 46, ll. 19-21.  Therefore his only claim can be that the air compressor was improperly installed.  In his first two weeks of work with it for H&E, Pope told Harrington that pulling the cord over the side of the pickup truck was not a safe way to start the air compressor, but Harrington told him that H&E had been using the air compressor in that manner for a long time.  Ex. 2, p. 50, l. 14-p. 52, l. 5.  No changes were made to the starting procedure after this conversation.  Ex. 2 at p. 51, l.7-p. 52, l. 5.  Pope did not mention his concern to anyone else.  Ex. 2, p. 85, ll. 16-22.  Pope continued to use it without problems until February 2, 2011.  Ex. 3, p. 51, ll. 11-16.  On that day, Harrington told Pope to fill a

-14-

flat tire on a car in the parking lot.  Ex. 2, p. 27, ll. 21-24; p. 30, ll. 10-15; p. 44, ll. 1-5.  Using the air compressor on the pickup truck as he was instructed, Pope claims that when he pulled the cord, it "kicked back" and thereby strained his right shoulder, which became painful.  Ex. 2, p. 46, l.7-p. 47, l. 7.  Pope finished the job and returned to the H&E vehicle maintenance shop. Pope testified that a properly working machine will sometimes kick back and that he had experienced such with a pull cord on a small engine.  Ex. 2, p. 29, l. 21-p. 30, l. 9.  Thus a kick back does not mean the machine is necessarily defective.[3]  Ultimately, however, Pope had rotor cuff repair surgery.  He returned to full duty work for H&E at the LaPorte plant with no restrictions after three months.  Ex. 2, p. 11. l.23-p.12, l. 2; p. 72, ll. 4-17.  In 2012, however, he again suffered an on-the-job injury to his right shoulder, had a second surgery, and was laid off by H&E.  Ex. 2, p.6, l. 14-p. 7, l. 6;p. 7, ll. 19-22; p. 5, ll. 16-17.

DuPont argues that Pope's injury arose from the activity of the independent contractor's starting an air compressor installed in the bed of the pick-up truck by his independent contractor employer.  When an independent contractor or its employee creates a premises defect by his work activity, the general contractor generally has no duty to warn the independent contractor or its

---

[3] The Court notes that Sullivan, Pope's expert, agreed.  #32-4 at ll. 14-23.

employees of the defect.   *Koko Motel v. Mayo*, 91 S.W. 3d 41, 46
n.6 (Tex. App.--Amarillo 2002), *citing Pence Constr. Corp. v.
Watson*, 470 S.W. 2d 637, 639 (Tex. 1971).   The premises owner may
be liable to the employee of an independent contractor involved in
the injury-causing activity if the owner retains the right of
supervisory control over work on the premises.   *Costal Marin Serv.
of Texas, Inc. v. Lawrence*, 988 S.W. 2d 223, 225-26 (Tex. 1999).
That retained right of control must reach the operative details of
the contractor's work to the degree that he is not free to work in
his own way.   *Bell v. VPSI, Inc.*, 205 S.W. 3d 706, 719 (Tex. App.--
Fort Worth 2006, no pet.).

In sum, contends DuPont, the essential facts are undisputed.
H&E has specialized expertise in the work for which it contracted
with DuPont.   The quoted passages of the contract establish that
H&E was hired as an independent contractor and that H&E was
responsible for recognizing and avoiding hazards.   Regarding the
DuPont-owned equipment, the contract unambiguously states, "The
methods employed and the precautions taken to handle DuPont-owned
equipment, material and product, if any, shall be determined by and
rest solely with H&E Equipment Services."   Ex. 1A, Service
Contract, Ex. C, ¶ 24.   The contract places the sole responsibility
for any of H&E's work performed at the DuPont LaPorte plant
premises on H&E and its employees.   An H&E employee supervised
Pope; there is no evidence that he was supervised by a DuPont

-16-

employee.   There is no evidence that DuPont participated in the installation or maintenance of the air compressor that allegedly injured Pope.   Plaintiff's only testimony about DuPont's involvement with H&E is DuPont's performance of safety audits, which as a matter of law is not evidence of any kind of supervisory control.   The presence of a safety employee on the work site does not mean a duty is created to an independent contractor's employees to intervene and ensure that the independent contractors employees safely perform their work, nor is it evidence that the premises owner controlled the method of the independent contractor's work or its operative details.   *Koch Ref.*, 11 S.W. 3d at 157; *Bright*, 89 S.W. 3d at 608.   DuPont is also entitled to summary judgment on the potential claim that Plaintiff was injured as a result of a premises defect not associated with Pope's work activity, i.e., defects that existed when the invitee entered the premises or that were created through some means unrelated to the activity of the injured employee.   Because Pope testified that the air compressor was not defective and was in good working order, his only remaining claim can be that the air compressor was improperly installed.   But in his first two weeks he recognized that the air compressor was installed in a manner that made it unsafe to start and he told his supervisor, yet he continued to use the air compressor as installed by his employer on a daily basis for over two years until his accident on February 2, 2011.   Because he knew of the alleged

-17-

dangers associated with the actions he undertook, i.e., that the dangerous condition was open and obvious,[4] no duty was triggered on DuPont's part, and DuPont is entitled to summary judgment regardless of what theory or premises defect Pope asserts.

### Pope's Response (#32)

Pope contends that deposition testimony shows that DuPont retained the actual right of control over Pope's work and exercised that right when a DuPont employee asked Pope to do work outside the scope of the contract between DuPont and H&E. DuPont also exercised actual control over the air compressor that caused Pope's injury and which, along with the truck, was owned and controlled exclusively by DuPont and which was unsafe and hazardous because of its design and installation. Therefore DuPont owed Pope a duty to

---

[4] "When an independent contractor creates a dangerous situation, the owner or general contractor usually has no duty to warn the independent contractors's employees of the premises defect." *Griffin v. Shell Oil Co.*, 401 S.W. 3d 150, 160 (Tex. App.--Houston [1st Dist.] 2011), *citing Olivo*, 952 S.W. 2d at 527. The reasoning behind this general rule is that "an owner or general contractor has no duty to ensure that an independent contractor performs its work in a safe manner." *Id.*

In *General Electric Co. v. Moritz,* 257 S.W. 3d 211, 216-17 (Tex. 2008), the Texas Supreme Court explained that a premises owner hires an independent contractor generally with the expectation that the independent contractor would note any "open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings." Placing the duty on the independent contractor "ensures that the party with the duty to warn is the one with the ability to carry it out." The high court observed that "independent contractors are hired for special projects that often entail special expertise, and can be expected to use whatever equipment or precautions are necessary so long as the hazard is not concealed." *Id.*

provide a safe environment, safe work conditions, and safe equipment. Pope insists that DuPont breached this duty and its motion for summary judgment should be denied.

Asserting that DuPont's control created an unreasonable risk of harm to him, Pope argues that Fred Lyu, who proclaims himself to be the number two man in control at Dupont (#32 at p.20, ll. 5-12), testified that "DuPont had the authority to control what happened inside its plant and outside its plant gates to the extent that it's their premises," an area including the parking lot where Pope was fixing a flat tire when he was injured. *Id.* at p. 33, ll. 18-25. DuPont had the authority to stop any activity it considered to be unsafe or dangerous. *Id.* at p. 34, ll. 6-15. DuPont owned the air compressor on which Pope injured himself. *Id.* at p.39, ll. 4-9.

Pope asserts that at Lyu's request, DuPont replaced the air compressor about thirty days after Pope was injured with one with an electric starter, even though calls by DuPont to various sites with these same kind of manual pulled starters indicated there was no problem with the equipment. *Id.* at pp. 50-51. Lyu asked Jeff Herrington to get a different kind of starter for the air compressor, and Herrington reported that it was cheaper to get a new unit than just a starter. *Id.* at p. 52, ll. 1-11. Lyu stated he believed someone at H&E ordered the new compressor and DuPont paid for it. *Id.* at ll. 12-13. Pope maintains that DuPont had

absolute control over the use, safety, and risks of its own equipment. Lyu further testified that some time after Pope was injured, DuPont decided that H&E should not go outside the gates and do repairs. *Id.* at p. 67, l. 21-p.68, l.1. Although Pope claims that the "work order that requested Mr. Pope to repair a flat tire of a **DuPont** employee in **DuPont**'s parking lot was given by a **DuPont** employee in the course and scope of employment with **DuPont** (#32 at p. 8, emphasis in the original)," this is a mischaracterization of the deposition testimony. See #32-1, Lyu's Dep. at p.28, l.17-p. 29, l. 14. Lyu actually stated that neither he nor Herrington knew who the employee who called in for help was nor who employed him.

Pope also cites the deposition of his liability expert, Peter James Sullivan, who testified that a proximate cause of Pope's accident was DuPont's Speedaire gasoline portable air compressor, mounted in an awkward and unsafe manner in a truck provided by and controlled by DuPont. #32-4, p.19 at ll. 3-11. Pope quotes Sullivan, "DuPont management failed to prevent and to rectify the unsafe condition in a timely manner before Mr. Pope was injured while using the equipment. And they failed to provide oversight of their contractor H&E to make sure that the equipment was mounted and used in a safe manner." #32, p. 10, citing Sullivan Dep., #32-4 at p. 19, ll. 12-17; see also *id.* at p. 20, l. 8-p. 21-l. 16 (manner in which the compressor was mounted on the pickup truck

made the combination unreasonably dangerous).  Pope further claims that Sullivan found that DuPont controlled the equipment by providing the facility from which H&E operated, providing the pickup truck, providing the compressor, auditing and inspecting the facilities to make sure they were maintained sufficiently, keeping the work area clean and free of hazards, and inspecting the pickup truck and air compressor for proper maintenance and safety. Sullivan Dep., #32-4 at p. 43, ll. 15-24. Pope argues that DuPont's safety manager failed to provide the necessary oversight, to recognize and rectify the unsafe condition of the compressor. Sullivan contends as a sign of DuPont's control that it did an extensive investigation after Pope was injured and that prompted by Lyu, DuPont replaced the whole system with an electric starter compressor.  #32-4 at p. 62, ll. 18-24.  Sullivan stated, "I should say that Mr. Lyu was in ultimate control of that decision [to replace the system] because he had to approve any configuration changes or equipment replacements."  *Id*. at p. 63, ll. 11-14.

Pope summarizes as seven, overlapping issues of fact regarding DuPont's control, some very general and vague, that he argues should result in the Court's denial of DuPont's motion for summary judgment (emphasis in the original, #32 at p. 19):

1. A **DuPont** employee gave a verbal work order for an H&E employee, Ricky Pope, to change a flat tire on a **DuPont** employee's vehicle.
2. **DuPont** owned the equipment that was involved in Ricky Pope's injuries, i.e., the air compressor and the truck;
3.  The equipment was unsafe due to the way it was

mounted in **DuPont's** truck.  **DuPont** created an unsafe work and an unreasonably dangerous condition which **DuPont** provided to H&E to use;

4.  **DuPont** had complete audit and inspection rights under its contract with H&E.  DuPont knew the condition of its own equipment;

5.  **DuPont** was negligent in a number of ways which led directly to Ricky Pope's injury;

6.  **DuPont's** control created a duty of reasonable care towards Ricky Pope.  **DuPont** breached that duty, proximately causing Ricky Pope's injuries; and

7.  **DuPont** failed to provide safe equipment to Plaintiff Ricky Pope.

Pope further argues that the provisions in the contract that require H&E to keep records and give DuPont the right to audit and inspect them support his claim of DuPont's control.

Pope insists that DuPont's actual exercise of control over its equipment that Pope was using when injured creates a duty because it was directly related to the work activity that caused the injury, because a DuPont work order required Pope to use that equipment, because DuPont controlled the details of where Pope was to work and what he was doing when he got hurt, and because DuPont had a contractual right of inspection of the equipment that caused the injury.

Moreover under Texas premises liability law, DuPont had a duty to use reasonable care to make its premises safe for the use of invitees.  Pope claims he can make a *prima facie* case against DuPont for premises liability negligence by showing that DuPont's equipment was unreasonably dangerous at the time Pope used it, that DuPont was aware of the condition of that equipment before Pope's

injury, that DuPont failed to correct the condition of the equipment until after Pope was injured, and Pope's injury was caused by the unreasonably dangerous condition of DuPont's equipment.

### DuPont's Reply (#36)

DuPont maintains that the evidence put forth by Pope is not evidence that creates a duty, nor evidence of control, nor evidence of an actionable premises defect.

First, Lyu's deposition testimony does not relate to the type of control that is required to impose liability of a premises owner because it does not establish "control over the work." *Peterson v. RES America Construction, Inc.*, No. 13-10-0238-CV, 2011 WL 2582560, at *5 (Tex. App.--Corpus Christi June 30, 2011, no pet.)("A general contractor is considered a 'possessor' of the property at issue if it retains the right of supervisory work on the premises."). Although DuPont has the authority to sell or lease its property, control access to its property, and shut down its facilities, that kind of control is not the control of the manner in which the work is performed. *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W. 3d 688, 700-01 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). DuPont further points out that Lyu's claim that "DuPont by and through Mr. Lyu decided that H&E employees such as Mr. Pope were not to go outside the DuPont gates and do repairs" is not supported by Lyu's deposition testimony. Apparently H&E employees had been

doing so for quite a while, and DuPont discovered it was not within the scope of the contract and informed H&E that it was not to go outside the gates and do repairs only after Pope's injury.  #32-1 at p. 67, l.4-p. 68, l.15.  Deciding that an independent contractor should stop performing work that it was not contracted to perform is not evidence of "control over work" being performed by an independent contractor; rather it is utilizing the premises owner's general right to order the work to stop or start and thus not actionable under Texas' premises liability law.  *Bell v. VPSI, Inc.*, 205 S.W. 3d at 719.  Moreover the instruction that the independent contractor was limited to work described in the contract occurred only after the accident and thus does not establish control over work that caused the injury.

Although Pope claims that a DuPont employee gave the work order that Pope was to repair a flat tire of a DuPont employee in DuPont's parking lot in the course and scope of his employment with DuPont, the deposition transcript does not reference any work order nor identify the purported DuPont employee who gave such an order nor indicate the DuPont employee's responsibilities to prove that making such a call was within the employee's course and scope of employment.

DuPont objects to Sullivan's expert report as unsworn and as hearsay, and therefore inadmissible.  Furthermore DuPont claims that the following of Sullivan's opinions, as discussed on pages 9-

18 of Pope's response, are irrelevant to the issues raised in the motion for summary judgment (i.e., that DuPont did not owe a duty to Pope; that there is no evidence of a right of supervisory control by DuPont over Plaintiff's work; and that Pope was aware of any alleged premises defects) and should be excluded under Federal Rule of Evidence 402:  (1) the air compressor was mounted in an awkward, unsafe manner, and/or dangerous manner; (2) the air compressor was unsafe; (3) to safely start a pull start gasoline powered air compress it had to be mounted below waist level; and (4) the alleged "poor angle on the pull start cord" made it more likely for the air compressor engine to kick back.  Furthermore, Sullivan's remaining opinions relate to safety audits and inspection, which are not the type of control that can impose liability on a premises owner who retains an independent contractor.  As the Court indicated earlier, it is black letter law that having a safety employee on the work site and safety inspections does not create a duty to an independent contractor's employees to intervene and ensure that they safely perform their work (*Koch Ref.*, 11 S.W. 3d at 157), nor does it constitute evidence that the premises owner controlled the method of work or its operative details (*Bright*, 89 S.W. 3d at 608).  Federal Rule of Evidence 402 requires the exclusion of irrelevant evidence. Moreover Pope's allegation that DuPont "failed to provide oversight" is not evidence of control, but an allegation of

negligence that cannot prevail without the existence of a duty. Sullivan's opinions that DuPont audited and inspected H&E facilities and that DuPont failed to provide oversight of H&E are nonresponsive to DuPont's motion for summary judgment.

Sullivan, purportedly relying on Lyu's deposition testimony, at one point acknowledges that H&E was involved in replacing the air compressor, and at another, claims DuPont made the decision on its own. Lyu actually testified that H&E employee Jeff Herrington recommended the air compressor that DuPont subsequently purchased to replace the one that allegedly injured Pope and that H&E ordered the new one. Thus Sullivan's opinion is inconsistent and not based on the facts upon which he claims he relies, and it should be excluded.

As for DuPont's replacement of the compressor with one with an electrical switch, Federal Rule of Evidence 407 prohibits the use of subsequent remedial measures to prove negligence or other culpable conduct, and therefore such evidence is also not admissible.[5] Nor does requesting a new compressor involve control of the operative details of the work; the evidence is that the air compressor at issue was not defective. The complaint asserted that the mounting of the air compressor caused the problem, and there is no evidence that DuPont was involved in the mounting. Sullivan

---

[5] *See, e.g., Adams v. Chevron USA, Inc.*, 383 Fed. Appx. 447, 451-52 (5th Cir. June 23, 2010)

testified that DuPont had notice of the alleged dangerous condition of the air compressor configuration and opines that Pope's complaints about the mounting should have been forwarded to DuPont by Herrington.   Nevertheless Sullivan presents no evidence that Herrington did forward the information to DuPont or that DuPont employees actually observed that the air compressor configuration was allegedly unsafe.[6]   Pope, himself, did not inform DuPont of his complaint.   Thus Sullivan's expert testimony about notice should be inadmissible.   *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

In summary, DuPont contends that uncontested facts show that the alleged premises defect was created by the work activity of H&E when its employees installed the air compressor in the bed of the pickup truck.   Pope does not dispute that H&E created a dangerous condition.   Under Texas law, DuPont had no duty to warn of a

---

[6] It is uncontested that an H&E employee installed the air compressor in the bed of the pickup truck without any supervision or inspection by DuPont several years before Pope became an employee of H&E and that H&E employees used it for years without incident.   After his employment, Pope used it fr more than two years without injury before he hurt his shoulder.   Altogether the air compressor was used without injury for more that four years by H&E employees, without their telling DuPont representatives that there were problems with its installation or use.

premisses defect created by H&E's work activities.  *Koko* Motel, 91 S.W. 3d at 46 n.6.

### Court's Decision

Because the Court agrees with DuPont's recitation of the law and its application to the relevant, uncontested facts here, the Court

ORDERS that DuPont's motion for summary judgment is GRANTED. A final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this __14th__ day of __July__, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-28-